JUDGE CARRINGTON,
who concurred, in. opinion with JUDGE TUCKER, says, (after viewing the testimony in the same light with him,) “thus I think an equitable title to hold the land in fee-simple was vested in the son.”
I consider this case as a strong authority on this point; it was eminently a case of compassion; for the wife was “abandoned to want and distress” by the decree of the Court. No lawyer and no Judge contended that the son had more than an equitable estate in the premises; and the case would probably have been given up on the part of the widow, but for the intervention of the act of 1785; and yet there was an agreement for a fee, (according to the opinion of two Judges,) long possession during the cover-ture, and money and labour laid out and expended. It did not, however, occur to the counsel in that case, (more than in the case before us,) that these circumstances gave a legal estate to the son, in the total absence of a deed or other writing. In coming to this conclusion, the two Judges in this case, like their predecessors in former times, no doubt had the *act of 1734, now relied on, before them, as well as the act of 1710; and when we consider that that act has never been relied on for the purpose now con *700 tended for, through a long course of time, either by the bench or bar, it affords a strong presumption that the construction now set upon it, by the Judge who preceded me, is not to be maintained.
The words of the act of 1710, which I suppose to be so imperious, are, “that no lands, tenements, or hereditaments shall pass, alter, or change from one to another, whereby an estate of inheritance in fee-simple, fee-tail, &c. shall be made or take effect in any person or persons, or any use thereof to be made by bargain and sale, lease and release, &c. or other instrument, unless the same be made by writing indented, sealed and recorded,” &c. (a) Is it possible that any words can be more conclusive than these, to shew that no estate of inheritance passed from Allen M’Rae to William Black, for want of a writing indented and sealed, and that, consequently, his wife was not entitled to dower.
Such is decidedly my opinion upon the general question. Some objections arising out of this particular case deserve, however, to be briefly noticed.
It is said that the acceptance by Kirkpatrick of the deed from Black, of May ' 1.773, estops him and those claiming under him, from objecting that Black had not the legal title. I answer that equity is not fond of estoppels, especially in a case wh'ich is so far from being a case of compassion, that the widow would in fact get double portions. But could that deed be construed to have that effect? It indeed amounts to a complete covenant, on the part of Black, to assure a perfect title; but it is remarkable that the deed itself does not deduce the title down to Black, but stops at Allen M’Rae, having deduced the title no further. I consider, therefore, that both parties understood at the time that the legal title was not then in Black, but in M’Rae, although Black covenanted to procure and convey one; and this idea is fully supported by the testimony.
*It has been said by counsel, that the appellees in this case might elect to consider Black as a disseisor, and that the wife of a disseisor is entitled to dower. I shall not stop to inquire whether this position be tenable or not; but it is evidently in conflict with another ground of title set up in this case, which is, that the purchase in this case for a valuable consideration, accompanied with possession, conveys a legal title. This idea of election is also reprobated by the appellees’ own statement in their bill, that they had actually received a deed for this land, which, by accident, has been lost. Both these grounds and pretensions are .entirely incompatible with the idea of a disseisin, which is defined to be “a wrongful putting out of him that is seised of the freehold. ” (b)
I have thus viewed this claim of dower as one which (however founded in morality and justice) must, as to the extent thereof, be regulated by the rules of law; and that we are as much at liberty to violate those rules, in relation to the portion of interest claimed for dower, as in relation to the nature and quality of the estate out of which it is to issue: I have considered that the law on this subject is settled, perhaps beyond the power of any single case, and cer-tainlj' beyond the power of the single and varying case of Dobson v. Taylor, to affect or alter: that the case before us, so far from being a case of compassion on the part of the widow; so far from presenting the instance of a widow destitute of ,all other means of support, as was the fact in the case of Dobson v. Taylor; presents the spectacle of an application to a Court of Equity for double portions; for, while the appellees are actually enjoying the price given as an equivalent, they demand also their share of the thing for which that price has been received: I have supposed that great and unforeseen clogs and mischiefs would result from carrying this doctrine to the extent contended for on the part of the appellees, in relation to a country in which lands held by equitable title only, pass, in some sense, as a species of merchandise; while, at the same time, the widows are entitled to their share, under the act of distributions, of the *price for which such lands have been sold; and it is also true that almost all lands intended for permanent ownership, are in this country held by perfected legal titles; and that, however this may be as a matter of policy, and, whatever may be the true construction of the act of 1785, on this subject, that act has neither altered, nor had the Legislature power to alter the law, as it related to pre-existing cases.
On a long and deliberate consideration of the case, I must therefore declare it as my opinion that the decree in question is erroneous, and ought to be reversed, and the bill of the appellees dismissed.
JUDGE FLEMING.
Two questions are presented in this case:
1st. Whether William Black had a legal estate in the lot No. 26, in the town of Alexandria, during this coverture with the appellant, Mrs. Claiborne? and if not,
2dly. Whether she is dowable of the equitable estate?
With respect to the first point, it is laid down, Co. Litt. 9, a. and 121, b. and in other cases which have been cited, that corporeal hereditaments, which lie in livery and seisin, either in deed or in law, may pass to a purchaser for a valuable consideration, without deed; and it was argued, that as William Black purchased the lot in question of Allen M’Rae, paid the purchase-money, and, by his agent, received rents for the same, it amounted to a seisin in law, and vested the legal estate in him, and consequently, that having the title so vested, during the coverture, his widow was instituted to dower therein.
This position may be correct at common law, but it appears to me that our act of Assembly of 1748, which was then in force, and which I conceive to be imperative, has effectually overruled the doctrine. By that act it is declared that “no lands, tenements or hereditaments, within the then colony, shall pass, alter, or change from one to another, whereby any estate of inheritance in fee-simple, fee-tail general or special, or any estate for life or lives, or *any greater or higher estate, shall *701 be made or take effect in any person or persons, or any use thereof to be made, by bargain and sale, lease and release, deed of settlement to uses of feoffment, or other instrument, unless the same be made b3 writing, indented, sealed and recorded, in the records of the General Court, or of that County where the land mentioned to be passed or granted shall lie, in manner following, that is to say, to be recorded within eight months, where the party making the same resides within the colony, and not admitted to record unless acknowledged in court, by the grantor in person, to be his or her act and deed, or else that proof thereof be made, in open Court, by the oaths of three witnesses at the least. And all deeds, conveyances, &c. not made and recorded according to the directions of the said act, declared void, as to creditors and subsequent purchasers, but are nevertheless valid and binding between the parties and their heirs, although not recorded.” But there being no proof that any deed or writing ever passed between M’Rae and Black, for convej'ing the said lot, it appears to me that the latter never had a legal title to the same, and consequently, that neither he, nor any claiming title under him, could have maintained an ejectment to recover possession thereof, but must have resorted to a Court of 'Equity to perfect the title. And having an equitable title only, we are next to inquire whether the widow be instituted to dower in the premises?
There have been some contrariety of opinions on the subject amongs: the Judges in England, and a distinction taken between cases where dower is claimed against the heir, and against a purchaser, in favour of the latter. The principal case that seems to favour the claim of the appellants, is that of Banks v. Sutton;(a) but that case has been long since overruled in a number of instances; and it seems now well settled that a wife shall not be endowed either of a trust estate of inheritance, or of an equity of redemption of a mortgage in fee. And Lord Hardwicke, in giving his opinion in the case of Godwin v. Winsmore, (b) observed 'that there was no ground for the distinction taken by Sir Joseph Jekyll, in the case of Banks v. Sutton, in regard to a trust, where it descends or comes to the husband from another, and where created by himself, as in the case of Bottomly v. Lord Fairfax, (c) And his Lordship cited the case of the Attorney-General v. Scott, before Lord Talbot, as overruling the case of Banks v. Sutton; also Chaplin v. Chaplin, (d) and other cases that have been cited. And in a late case of Dixon v. Saville, (e) it was decided by the Lords Commissioners, Loughborough, Ash-hurst, and Hotham, unanim.ously, that a widow is not dowable of an equity of redemption ; and this in a case too, where a very trifling provision was made for the widow, by her husband’s will, which is not the case in the cause now before the court, as Mrs. Claiborne now enjoys a very handsome dowrj’ in her late husband’s estate; and the contest is now between her and fair purchasers, for valuable considerations, without actual notice of her intermarriage with William Black. Indeed there has not been, that I recollect, a single case adduced, where a woman has been endowed of a mere equitable estate in the husband.
On these grounds then, and on these authorities, I am of opinion that the decree is erroneous, and ought to be reversed, and the bill of the complainants dismissed with costs.
By a majority of the Court, the decree of the Chancellor reversed, and the bitl dismissed.

 Old code of Vir. Laws, edit, of 1733, p. 257.

 3 Bl. 145.

 3 P. Wms. 701.

 3 Atk. 525.

 Prec. in Cha. 336.

 3 P. Wms. 234.

 Bro. Ch. Cas. 326.